1  Your Name:      Daniel Kisliuk

2  Address:        General Delivery, Fort Bragg, CA 95437

3  Phone Number:   707 734 0745

4  Fax Number:

5  E-mail Address: shariafinancial@gmail.com

6  Pro Se Plaintiff    *Yes*

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10        Division *[check one]*: ☐ San Francisco ☐ Oakland ☐ San Jose ☑ Eureka

11

12  |                          | Case Number   24-CV-03440 |

13  | Daniel Kisliuk           |

14  |        Plaintiff,        | **THIRD** |

15  |    vs.                   | **AMENDED COMPLAINT** |

16  | City of Fort Bragg, Et al. |

17  |                          |

18  |                          | DEMAND FOR JURY TRIAL |

19  |                          | Yes ☐   No ☑ |

20  |        Defendant.        |

21

22                      **PARTIES**

23      1.  Plaintiff.

Name:       Daniel Kisliuk

24
Address:    General Delivery, Fort Bragg, CA 95437

25
Telephone:  707 734 0745

26

27

28

2.  Defendants.

Defendant 1:

Name:          City of Fort Bragg

Address:       416 N. Franklin St., Fort Bragg, CA 95437

Telephone:     707 961 2824

Defendant 2:

Name:          Neil Cervenka (Personal/Individual Capacity)

Address:       250 Cypress St., Fort Bragg, CA 95437

Telephone:     707 961 2800

Defendant 3:

Name:          Thomas O'Neal (Personal/Individual Capacity)

Address:       250 Cypress St., Fort Bragg, CA 95437

Telephone:     707 961 2800

Defendant 4:

Name:          Tyler Baker (Personal/Individual Capacity)

Address:       250 Cypress St., Fort Bragg, CA 95437

Telephone:     707 961 2800

Defendant 5:

Name:          Padriac Ferris (Personal/Individual Capacity)

Address:       250 Cypress St., Fort Bragg, CA 95437

Telephone:     707 961 2800

Defendant 6:

Name:          Jonathan McLaughlin (Personal/Individual Capacity)

Address:       250 Cypress St., Fort Bragg, CA 95437

Telephone:     707 961 2800

1 Defendant 7:

2 Name:        County of Mendocino

3 Address:     501 Low Gap Rd., Ukiah, CA 95482

4 Telephone:   707 463 4441

5 Defendant 8:

6 Name:        Stephen Bonner (Personal/Individual Capacity)

7 Address:     951 Low Gap Rd., Ukiah, CA 95482

8 Telephone:   707 463 4463

9 **JURISDICTION**

10    3.   My case belongs in federal court

11    ☑ under <u>federal question jurisdiction</u> because it is involves a federal law or right.

12 42 U.S.C. 1983 (First, Fourth, Fourteenth Amendments, IIED).

13    ☐ under <u>diversity jurisdiction</u> because none of the plaintiffs live in the same state as any of the

14 defendants <u>and</u> the amount of damages is more than $75,000.

15 **VENUE**

16

17    4.    Venue is appropriate in this Court because:

18         ☑ a substantial part of the events I am suing about happened in this district.

19         ☐ a substantial part of the property I am suing about is located in this district.

20         ☐ I am suing the U.S. government, federal agency, or federal official in his or her

21             official capacity <u>and</u> I live in this district.

22         ☑ at least one defendant is located in this District and any other defendants are

23             located in California.

24

25

26

27

28

**INTRADISTRICT ASSIGNMENT**

5.      Because this lawsuit arose in Mendocino County, it should be assigned to the Eureka Division of this Court.

**STATEMENT OF FACTS**

6. At roughly 12PM on November 1st of 2023, I was sitting in my car listening to the radio when I heard Captain Thomas O'Neal of Fort Bragg Police Department broadcast on the radio that a reporting party indicated that an injured tabby was limping northbound from the corner of Harold & Oak streets in Fort Bragg, CA. I had recently lost my tabby cat roughly 5 blocks from there, & juveniles had been torturing & killing cats in the time prior to the call. Police records will show Fort Bragg Police Department responded to a call regarding a dead cat that had been tortured by juveniles on or around October 23rd of 2023, near South Street in Fort Bragg, California.

7. Upon hearing this radio traffic indicating that a cat matching my cat's description was injured & limping in the same area he was last seen, I became severely emotionally distressed & ran towards the broadcasted location in hopes I could find my cat & that he was not injured by the individuals who had been torturing & killing cats. Upon reaching one of the broadcasted locations, I realized that Officer Tyler Baker of Fort Bragg Police Department was not where he claimed to be on the radio. I assumed he had already left & continued in the direction Baker broadcasted the cat was traveling. I arrived at the next destination Baker claimed to be present with my cat; Otis Johnson park in Fort Bragg, realizing again that Baker was not where he claimed to be on the radio. I continued to look for my cat, not realizing they had made up this entire call to draw me away from my vehicle & tow it without my knowledge or prior warning.

8. After searching for my cat, I returned to the Central Coastal Trail where I first heard the radio traffic about the cat. Upon arriving, I found O'Neal & his entire subordinate police force that was on duty, standing in the place my car had been parked. My car had been towed, containing all of my belongings, by O'Neal Sergeant Padriac Ferris of Fort Bragg Police Department with the company of subordinate officers Tyler Baker & Jarod Frank. My vehicle registration was expired, which is one of the reasons officers claimed they had towed my car; however I could have had the

vehicle towed onto private property if officers had asked me to remove it from public property. Records of other tow operations regarding parked vehicles will show that officers of Fort Bragg Police Department normally provide owners of vehicles warning of impending tow, so long as they can locate the owners of the vehicles. O'Neal & Ferris knew my location before & during their tow operation, as O'Neal was circling my location & stalking me prior to broadcasting the call about the cat, yet O'Neal & Ferris intentionally deprived me of the traditional warning their department gives others, making the seizure unreasonable & thereby violating my right to be free from unreasonable search & seizure, as the seizure was unreasonable due to an intentional infliction of emotional distress. This intentional infliction of emotional distress will be discussed in the next paragraph.

9. After arriving & realizing my car had been towed, I began arguing with the officers about why they had towed my car. Suddenly, after hearing them explain why they had towed my car, I realized the entire story about my cat being injured was a premeditated plot to drive me away from my vehicle so that it could be towed without my knowledge. I said something along the lines of "Wait, you guys made up that whole thing about my cat so you could tow my car?". O'Neal initially pretended not to hear me but later responded & admitted he had fabricated the call about my cat in order to divert me away from my car. This development is discussed in item/paragraph 13 of this complaint. Additionally O'Neal admits this fact in his police report attached to this complaint.

10.  After realizing O'Neal had fabricated this call about my cat being injured & refused to admit it, I began to lose control of myself; walking back & forth in an effort to restrain myself. As I realized I was losing control of myself, I decided to leave & subconsciously expressed my level of frustration regarding the extremely malicious & sadistic tactic employed by O'Neal & his subordinate officers. Specifically, as I was walking away I said "I'm about to kill you guys dude.". I was then arrested for allegedly resisting or obstructing an investigation by violence or threat of violence, or Penal Code 69 of the California Penal Code. As inflammatory as this statement was, I was in an extreme state of emotional distress & was not fully aware of what I was saying & how it might be interpreted. I made the statement subconsciously as I was leaving in an effort to announce to the officers I could not speak to them anymore without losing control of myself.

11. During my arrest, my Miswak toothbrush was taken out of my mouth by one of the

officers. Miswak is an article of my religious property, as Miswak is a form of toothbrush only Muslims use. I am unsure which officer threw my Miswak on the ground, but bodycam footage will indicate the officer who did so. I have been denied access to the bodycam footage by the City of Fort Bragg, & am therefore unable to distinguish the officer. Regardless of which officer threw my Miswak on the ground, O'Neal should be found responsible, as he has an obligation to intervene to prevent the unreasonable destruction of my property in accordance with the Constitution he swore to uphold. In the past O'Neal has defended his subordinate officers destruction of my Miswak toothbrushes, claiming they "don't take biological property".

12. After I had been arrested & calmed down, O'Neal took my keychain from my hip & gave it to Ferris, ordering him to give the keychain to the tow company that took my vehicle; Fort Bragg Towing & Auto Repair. The keychain included property of mine that was not associated with my vehicle; specifically two USB drives. The gifting of my property besides by car keys to the tow company was not lawful in any sense. Even if the destruction of my Miswak was considered lawful due to the fact I was resisting arrest when it was destroyed, the gifting of my USB drives to the tow company was not lawful, as they were not taken or withheld pursuant to any search, & were not associated with my vehicle beyond being attached to the keychain. Bodycam footage will show that after I was arrested, O'Neal ordered Ferris to gift my entire keychain, including USB drives that were clearly still elements of my property, to the tow company. O'Neal, despite his training & his position as Captain of the Fort Bragg Police Department, ordered a subordinate officer to give my property; property unrelated to any search or seizure, directly to a party completely outside of law enforcement, without any cognizance of the Fourth Amendment whatsoever, effectively robbing me with full confidence & entitlement. Bodycam footage will also show that subordinate officer Ferris, also having sworn to protect & uphold the Constitution of the United States, chose to violate the Fourth Amendment & fulfill O'Neal's unlawful order to give my USB drives to the tow company due to his unconditional loyalty toward his captain. Officers can & should testify that this information is correct, however in the event of a scandal, representatives of Fort Bragg Tow & Auto Repair can also testify that they were given a keychain which included USB drives not associated with securing the lien of my vehicle. The City of Fort Bragg & Fort Bragg Police Department are

agencies of the state of California, & all actions were performed by officers in the official discharge of their duties. Both the destruction of my Miswak & the gifting of my USB drives to the tow company were unlawful because the Miswak was destroyed rather than being stored in my property, & the USB drives were given to the tow company despite the fact they were not necessary for the tow company to secure a lien on my vehicle. Even with the arrest being lawful, the careless destruction of my Miswak & the gifting of my property to a tow company completely outside of law enforcement should raise alarms.

13. While I was in custody of Fort Bragg Police Department & sitting in the back of a patrol vehicle, I spoke to O'Neal again about his fabrication of the call about my cat being injured. He first denied fabricating the call, however upon being reminded that all of his officers were familiar with the incident he admitted he had fabricated this call personally in order to draw me away from my vehicle, alleging that I was dangerous & it was therefore necessary to inflict this emotional distress to ensure officer safety. This event should have been captured on bodycam with the other incidents. Even if it wasn't, police records & officer testimony will indicate this is the case. Additionally, dispatch workers from Ukiah Police Department also can testify that O'Neal fabricated this call, as they provide dispatch service for Fort Bragg Police Department & therefore know that there was no such report of an injured tabby walking down the street as O'Neal & Baker claimed there was on official police frequencies. O'Neal's police report of these events also includes his fabrication of this call, which is addressed in item/paragraph 17 of this complaint. Either before or after O'Neal admitted his fabrication of the cat ruse, he suggested my legal use of my radio was getting me into trouble. O'Neal's manipulative suggestion that my listening to the radio caused my arrest shows his true & ultimate intent in this cat ruse was to punish me for listening to police frequencies & frighten me out of exercising First Amendment rights to assemble & record police activities.

14. In California, plaintiffs are allowed to sue for intentional infliction of emotional distress so long as the conduct is outrageous, the defendant intended to cause emotional distress, the plaintiff suffered emotional distress, & the defendant's conduct was a substantial factor in causing the severe emotional distress. Federal Courts have jurisdiction over this state tort. Both O'Neal & Baker know that all reasonable people care about their pets, & that all reasonable people will become emotionally

distressed if they believe their pet is injured, or especially being tortured by sadists. Fort Bragg

Police Department responded to a call two weeks prior, on October 21st 2023,

(https://youtu.be/A1x4-JbNx2k?feature=shared) from a lady whose cat had died. It was broadcasted

on the radio that she had been shown video of juveniles torturing her cat prior to his or her death.

O'Neal & Baker both knew that cats were being tortured & possibly killed by sadist juveniles & that

I cared deeply about a cat which I had lost before becoming homeless. They also knew that I have

very few close friends in the area, & a strained relationship with my family. Despite having this

knowledge indicating how severely it might affect me if I believed my cat was injured or being

tortured, O'Neal & Baker proceeded to fabricate this information about my cat limping down the

street & broadcast it over official police frequencies to convince me it was credible. This sadistic

plan orchestrated by O'Neal & Baker is outrageous by any standard, as no person with any level of

integrity would plan & fabricate an event causing someone to believe their pet was injured or being

tortured, nor would anyone with any level of integrity follow through with or participate in this kind

of plan unless they intended to cause severe emotional distress to the owner of the pet they are

describing. Lastly, no reasonable officer would broadcast this information over official police

frequencies if they cared about the professionalism of their department. As a result of this intentional

infliction of emotional distress I experienced nightmares & resulting sleep irregularities for months,

as well as a continuing inability to work due to the loss of energy & motivation associated with loss

of enjoyment of life. I also continue to experience a particular post traumatic stress that prevents me

from exercising my First Amendment right to assemble & record officers of Fort Bragg Police

Department. Without some form of outside intervention, officers will continue this type of malicious

& unprofessional conduct, as O'Neal & his superiors in the Fort Bragg Police Department & The

City of Fort Bragg refuse to take responsibility, admit that their actions were wrong, & make the

corresponding reparations.

     15. Upon reviewing the police report submitted by Thomas O'Neal regarding the events of

November 1st 2023, I discovered multiple perjuries, both by intentional ommissions of fact & by

complete fabrication of certain events.

     16. In the background section of his police report for the events of November 1st of 2023,

O'Neal claims I was 'involved' in at least 5 reported assault cases in the 6 months prior to November 1st 2023, omitting the fact that I was the victim in every one of these incidents with the possible exception of one. O'Neal claims I got into a 'verbal argument' with a transient, though the transient had been stalking me for weeks. Records will show that I had reported the man at least twice before I was threatened & subsequently attacked on September 22nd, 2023. Video shows this myself being threatened & attacked by the transient, & that the transient is the same man I reported twice for stalking. (https://youtu.be/Gu8Rfz9S370?feature=shared). Officer Franco of Fort Bragg Police Department can also testify that I reported the individual at least once before this incident, with Franco making contact with the individual at least once, possibly twice. After I was attacked, officers of Fort Bragg Police Department negligently tried to arrest me for defending myself, however the District Attorney affirmed that I was defending myself. O'Neal intentionally omits the fact I reported this man for stalking several times prior, that I was defending myself in this incident, that I was affirmed by the District Attorney as defending myself, & that I was the victim in this incident & every other incident with the possible exception of one. Next O'Neal claims I "violently assaulted a female officer without provocation by head butting her during the booking process". This incident happened in early July of 2017, more than 5 years prior to the events of November 1st of 2023 & I was provoked, contrary to what O'Neal claims. The officer who I allegedly headbutted called me a criminal & was shaking me back & forth before when I headbutted her. I was in a fearful state, as I had never spent time in jail before, & I successfully completed 3 years of felony probation after the incident. The incident is irrelevant as it happened more than 5 years prior & I had never been arrested for a similar offense. The reference of an incident occurring more than 5 years prior shows O'Neal's desperation to convince the reader of his police report that I am a dangerous individual & justify his sadistic fabrication of the call indicating my cat had been injured & possibly tortured. Even if O'Neal's vindictive statements were true, which the majority are not, they would still not justify such a malicious & sadistic infliction of emotional distress, as officers are equipped with all kinds of weapons & protective gear to mitigate the threat O'Neal claimed I presented to him & his department. Next O'Neal claims that his towing of my vehicle was justified because he advised me to meet with his Care Response Unit to receive services & I never arrived. O'Neal did

claim that I should meet with his Care Response Unit prior, & I indicated my willingness to do anything I haven't already done to receive services, however I was never contacted to meet with them at any time before the incidents of November 1 of 2023. O'Neal says I 'never arrived' to receive services despite the fact he knows I was never contacted or invited to receive services at any time prior to the incidents of November 1 of 2023. Next O'Neal claims that during a conversation I had with him regarding the legal definition of self-defense, I said I was 'going to jam my knife into someone's throat if they don't stop messing with me'. This is a complete fabrication, & it is extremely concerning that O'Neal would feel comfortable making up a story like this to justify my arrest. I never made this statement or anything remotely similar to this statement, & O'Neal has no evidence of this. O'Neal claims he has a recording of me saying these words, but he does not. If O'Neal is allowed to testify about this perjured statement, he will be unable to produce any recording where I say anything remotely close to what he says I did. Next, O'Neal says I blocked a sheriff deputies path through a narrow hole in hedges in order to verbally accost the deputy during the call regarding tortured cats on 10/21/2023. I recorded the incident & the video shows I did not block the deputy as he says I did (https://youtu.be/A1x4-JbNx2k?feature=shared). He then claims I followed the same officers to another location to 'continue to verbally harass officers', when I was actually trying to get a look at the person suspected of torturing cats. Video footage shows I was remotely polite during this second portion of their investigation, & acting completely within my First Amendment rights the entire time. These blatantly false & vindictive statements in the background section of O'Neal's complaint illustrate how desperate he is to portray me as a criminal; going to extremely creative lengths to convince the District Attorney using my 'background' that I was responsible for the PC 69 of November 1 of 2023, completely disregarding police reports, D.A. findings & video footage that show nearly every one of his claims is false, & also attempting to criminalize me for exercising my First Amendment rights. I can provide the police reports to the Court & prove he made these statements & that the majority of these statements are false. Considering how many blatant lies he made in the background section of the police report which I can prove false, any claims which he cannot prove should not be trusted, as he has demonstrated that he is not credible in any capacity.

THIRD AMENDED COMPLAINT

PAGE _10_ OF 36 *[JDC TEMPLATE – Rev. 05/2017]*

17. In the narrative section of his police report for the events of November 1 of 2023, O'Neal states he "determined that towing Kisliuk's vehicle with him present would likely result in a violent confrontation… In order to encourage Kisliuk to leave the area, I broadcast on the radio that officers are looking for an injured cat. It should be noted, that I selected this particular broadcast due to Kisliuk's recent multiple social media posts regarding the animal abuse investigation involving a cat". O'Neal & his officers had dealt with me multiple times before this incident & know that I pose no risk of violence to the officers. I only headbutted one officer in 2019 after she made offensive statements & began shaking me around. I did 3 months in jail for this incident with years of felony probation following, successfully completing my probation. Again, O'Neal & other officers are fine with violent drunk men, yet they go to extreme lengths to make me seem violent due to my religious & political views. Had O'Neal actually believed I was unpredictable & a safety threat to officers, he would not have fabricated the call about my cat in order to cause me emotional distress, as nobody who fears violence from another person would do such an outrageous thing. Even if I posed a threat of violence to officers, which I didn't, that still would not justify such a sadistic & malicious plot as the one executed by O'Neal & his subordinate officer Baker. O'Neal & his officers are equipped with all kinds of weapons to protect themselves from such violent individuals, & I am a convicted felon with no legal right to own a firearm in the state of California. O'Neal conveniently omits that his fabricated call regarding the injured cat matched the description of my lost cat & that the location of the 'injured tabby' was in the same area I lost my cat prior. I had described my lost cat to O'Neal's subordinate officer Frank prior to this incident, which is probably the reason O'Neal knew the description of my cat. The last location Baker claimed to be present with the cat was Otis Johnson park, which is 1-2 blocks away from the location I last saw my cat. O'Neal then claims that after I arrived at the scene of his tow operation, I followed him around the scene. Bodycam footage shows this is false; that I approached him to confront him about his towing my vehicle at a normal distance for two people talking to each other; roughly 3 feet, & did not follow him around, but rather stayed in the same general location, walking back & forth, until I decided to leave. Next O'Neal claims "Kisliuk throws his boots to the ground, & charges towards me while extremely agitated coming within striking distance". Video footage will show this is another complete fabrication. I was

agitated & did throw my boots on the ground twice, however never charged at any officer. I was simply walking back & forth, frustrated & unable to decide whether I should argue with them or leave. O'Neal then claims I charged towards Ferris, coming within striking distance; again a complete fabrication. I never 'charged' either officer, & video footage clearly shows that O'Neal perjured himself by making this statement. O'Neal then claims he said "you can't charge up on me like that.". He never said this, as I never charged up on him, & bodycam footage from the officers clearly shows this is another instance of perjury. He makes these fabrications in attempt to convince the reader that I was charging at him & that he was being tolerant, but I never charged at him & he never made these tolerant statements, as bodycam footage shows. Next O'Neal claims that he told me I needed to walk away, which is another complete fabrication. I realized myself that I needed to walk away, & chose to do so. O'Neal then claims I said 'something to the effect of' "I'm going to kill all of you." O'Neal knows exactly what I said, but changed the statement in his report to make it sound more credible & cognizant. As stated in the prior paragraph, I said "I'm about to kill you guys dude" as I was walking away. There is a stark difference between someone saying "I'm going to kill you all" & "I'm about to kill you guys, dude." While the difference is linguistically small, it is important to note, as the meanings are massively different. O'Neal knew of this significant linguistic difference, yet intentionally falsified my statement in order to make my words seem more credible, cognizant, & more like a threat than they actually were. O'Neal intentionally falsified my statement because he knew I was in a state of severe emotional distress inflicted by him & felt desperate to convince the reader that my threat was serious & cognizant enough to disregard his intentional infliction of emotional distress prior to my statement. While my statement could be considered inflammatory, family members make these types of statements all the time when their brother, sister, son or daughter does something outrageous. Like a family member expressing frustration with another family member, I made the statement to express frustration, not as a threat. Lastly, O'Neal claims that while I was in transport I stated to Officer Frank 'something to the effect of' "When I get out, I am going to find you & provoke you so much that you are going to have to put a bullet in my head". This is the most concerning fabrication of all. During the time Frank & I arrived the jail, I was still extremely emotionally distressed about the incidents. Due to the fact I could not bear any

more stress, I told Frank to just put one in my head rather than send me into the jail. I did not make the first portion of the statement officers Frank & O'Neal claim I did. Bodycam footage should have captured this, as Frank recorded the entire trip to the jail. Even if Frank turned off his bodycam upon arriving at the jail, there were other witnesses at the jail when I told frank 'just put one in my head' who can testify that I did not make the fabricated first portion of the statement suggesting I was going to find officers & provoke them. I became extremely worried about my safety after learning officers had fabricated this statement, as they appeared to be setting themselves up to kill me. By making up this story claiming I said I was going to find them & provoke them until they put a bullet in my head, they seemed to be conspiring to form a possible defense for after they had shot me dead; to say that I provoked them & refer to this perjured statement later. I made a public records request for bodycam footage taken by Frank that day in order to prove this statement was perjured, however was denied, as O'Neal is the captain of the Fort Bragg Police Department & refuses to allow himself or his officers to be held accountable for perjury. This last perjured statement illustrates in full what O'Neal & his department's intentions are for political opponents or anyone else who exercises First Amendment rights, even after they are inflicted intentionally with emotional distress by officers. I have attached a portion of the medical assessment where nurse Leila Lamun documented my statement, showing that I did not make the first part of the statement perjured by either Officer Frank alone or Captain O'Neal & Officer Frank together. If for some reason there is an error & it is not visible to the Court, I can provide it in discovery. Although this perjured statement does not alone prove that I was arrested without probable cause, this statement shows that officers of Fort Bragg Police Department can & do perjure themselves in order to criminalize those they don't like, & this complaint will demonstrate that officers are not held accountable by Chief Neil Cervenka or Thomas O'Neal following these perjuries, no matter how apparent their perjuries are.

18. After Judge Faulder denied my pretrial release for the events of November 1st of 2023, I posted bail & stayed in a hotel for awhile, having nightmares & experiencing continuous emotional distress following the events of November 1 of 2023. While I was staying at the hotel, on November 7 of 2023, I heard a call about a lady's car being towed behind City Hall in Fort Bragg. I was still extremely frustrated from my most recent experience with Fort Bragg Police Department, so I went

to record the incident. Both Sergeant Jonathan McLaughlin & Captain Thomas O'Neal were on duty & present at the scene when I arrived. Immediately upon my arrival I began recording, & O'Neal told me not to come past the front end of a nearby truck. I complied with his order & remained behind the front of the truck to record; 10-15 feet outside of the vicinity of the officers & their subjects. Roughly 2 minutes later O'Neal told me to leave the scene or be arrested, claiming I was dangerous because I had a pocket knife clipped in my pocket. Video footage shows these events (https://youtu.be/iH90MbTXot8?feature=shared) & I can provide this video to the Court. O'Neal's threat of arrest violated my First & Fourth Amendment rights, as O'Neal knew I was engaging in a constitutionally protected activity when he threatened me with arrest, as he knows the First Amendment protects the filming of police officers, which is what I was doing from 10 to 20 feet away; yet still felt entitled to threaten me with arrest. O'Neal's threat to arrest me for recording from outside the vicinity of his investigation was an act that would chill a person of ordinary firmness from filming; a constitutionally protected activity, as no ordinary person willingly subjects themselves to kidnapping & incarceration. Lastly, the constitutionally protected activity of walking through the public & filming was not only a substantial or motivating factor in O'Neal's conduct, but the only possible factor, as it is all I was doing & all I intended to do, & the only action he was trying to prevent. He claimed that my possessing a pocket knife made him feel unsafe, however my possession of a pocket knife is also protected by the constitution. If his motivation was anything besides preventing me from exercising my First Amendment right, he would have allowed me to record, either from inside or outside the circumference of his investigation, with or without a pocket knife in my pocket. However, instead of allowing me to exercise my rights, he threatened me with arrest & caused me to leave out of fear of being unlawfully arrested. Again, I have video of the incident & can provide it to the Court. Unless Fort Bragg Police Department lost the footage, they should have it as well.

19. After leaving under threat of arrest, I went back to the hotel where I was staying to get something to drink. As I approached the hotel, I heard O'Neal announce on the radio "We've got a mother & child detained at this point." Upon hearing this I realized I was missing out on an important incident in the community & decided to leave the pocket knife O'Neal claimed to be

concerned about & return to record the incident. When returning to the scene, Officers immediately & aggressively moved in my direction to prevent me from getting close enough to record the interaction. I informed them I no longer had the knife Mr. O'Neal claimed to feel threatened by. O'Neal told me again not to come any closer, despite the fact I was roughly 150 feet away from the vicinity of his 'investigation'. This further violated my First Amendment right & proves O'Neal's only motivation for his conduct was to prevent me from exercising First Amendment rights. O'Neal told me I needed to record from Laurel Street, which was roughly another 150 feet away from the incident; at least 300 feet total & much too far away to capture anything. He threatened that if I came any closer he would put me in handcuffs, effectively demonstrating that he knew he could not charge me with 148 PC for recording, but would detain me instead. I told him I have a right to record but will take a few steps back to make him comfortable. O'Neal then appeared to allow me to record from roughly 150 feet away while he continued his investigation, however after McLaughlin & I argued for a few minutes about why I wasn't being allowed to approach the scene, O'Neal changed his mind & again aggressively approached me, saying "Leave the scene right now or you're going to be placed under arrest." I knew I was about to be arrested due to past incidents of Mr. O'Neal violating my First & Fourth Amendment rights, so began to leave, but O'Neal quickly said "You're under arrest for failure to obey a law officer's order." There was literally one second between the time O'Neal ordered me to to leave & the time he declared I was under arrest. This incident is shown in the video prior mentioned (https://youtu.be/iH90MbTXot8?feature=shared). I was in disbelief that I could be arrested for recording a police interaction from such a long distance & that O'Neal could arrest me for failing to obey an order which I had not but one second to follow, yet I complied with the order because I knew doing otherwise would only make it worse. O'Neal's statement that I was being arrested for failure to obey a law officers order led me to believe I was being arrested for vehicle code 2800; as that is the closest charge to the words he recited, however it turns out he was referring to 148 PC. Still, he had no probable cause to believe I had violated 148 PC, as all I was doing was exercising my First Amendment rights to assemble & record, & video shows this. After McLaughlin grabbed me & put my hands behind my back, Mr. O'Neal said "Stop resisting!" & put his hand on his gun while Officer McLaughlin held my arms. I was not resisting at all whatsoever; as

my hands were already behind my back & I made no attempt to prevent them from putting my hands behind my back. I told them I don't want my phone to be broken, & luckily O'Neal decided to grab my phone rather than removing his duty pistol & shooting me at point blank range as he was preparing to do. As stated prior, I had no weapons, as I left my pocket knife in my hotel room. O'Neal, although he has a tendency to reach for his gun whenever he is frustrated & make up fairy-tales to punish those he doesn't like for exercising their First Amendment rights, can & should testify to this, as records will show I had no pocket knife or other weapon when booked. O'Neal & McLaughlin claimed throughout the interaction that I was not being allowed to approach the scene due to my 'threatening' officers on November 1 of 2023, despite the fact they knew I was in a state of emotional distress when I made the statement & had not been convicted of the charge. Seeing as I was prevented from exercising my First Amendment right & arrested due to my prior 'threat', I was basically arrested for the events of November 1 of 2023 a second time. Both O'Neal's retaliatory arrest for my expression of my First Amendment rights as well as Mr. McLaughlin's assisting O'Neal in his retaliatory arrest for my exercising of First Amendment rights were both malicious, as they both know the First Amendment protects all of my activities that day. The First Amendment is a clearly established right; O'Neal cannot make any excuse for preventing me from exercising this right, & neither O'Neal or McLaughlin can make any excuse for punishing me after I returned & proceeded to record their investigation from 150 feet away with no pocket knife. Hence the officers fabricating probable cause for this event, which will be addressed in item/paragraph 25 of this complaint. Although my conduct might be considered inflammatory & unwise by the Court, I believe the Court will find that I was acting completely within my First Amendment rights & was kidnapped under color of law by O'Neal & McLaughlin in retaliation for my exercising these rights. Again, these officers violated my First Amendment rights while on duty, proving my rights were violated under color of law.

20. Again, O'Neal perjured himself in his police report regarding the incidents of November 7th of 2023, although less than he did in his report of the events on November 1st of 2023. O'Neal claimed to the District Attorney that I affirmed Frank's perjured claim that I told him that I was going to 'find' officers & 'provoke them until they put a bullet in my head', when I did not. I

affirmed that I told Frank to put a bullet in my head, not that I was going to 'find officers & provoke them until they put a bullet in my head'. Again, this statement was documented by the nurse & I can prove I did not make the statement Frank claims I did & that O'Neal fraudulently claims I admitted to saying. O'Neal said he was concerned for my mental health, which is clearly not true, as he frequently perjures himself to make me appear as violent as possible. His statement that he was concerned about my mental health, although I do not believe it, shows that he knew I was not intentionally & coherently interfering with their investigation. O'Neal then says I 'sprinted' to the scene when I returned, while video footage shows that is not the case. I had jogged to the scene both times, however slowed to a walk as soon as I could see officers both times, & video shows this. Even if I had sprinted to the scene, the right to peaceably assemble is protected by the First Amendment & nothing in the police report indicates that I had acted outside the protections of the First Amendment & therefore nothing in the police report suggests I resisted or obstructed a police investigation.

21. Shortly after I was arrested for recording the police interaction, O'Neal & McLaughlin took me to the booking facility where they told a judge to revoke my bail. As stated prior, I was still out on bail from the incidents of November 1 of 2023. Despite the fact I had committed no crime to violate my bail, McLaughlin told me the judge revoked my bail. O'Neal & McLaughlin therefore violated my Fourth Amendment right again by fabricating evidence before Judge Nadel, as they knew I was acting within my First Amendment right, but falsely claimed I had violated 148 PC in order to retaliate for my exercising my First Amendment right; sending me to jail without following the due process of establishing true probable cause that I had committed any crime or violated the conditions of bail. O'Neal claimed in his police report from the events of November 7 of 2023 that Judge Nadel revoked my bail, which later proved untrue. It is unclear whether Nadel told him she was going to revoke my bail or not; however regardless of what she told him, O'Neal should have known better than to allege to the county jail & district attorney that bail was revoked without following due process & obtaining a legal order to that effect.

22. Shortly after I was arrested for recording the police interaction, O'Neal & McLaughlin took me to the booking facility where they told a judge to revoke my bail. As stated prior, I was still out on bail from the incidents of November 1 of 2023. Despite the fact I had committed no crime to

violate my bail, McLaughlin told me the judge revoked my bail. O'Neal & McLaughlin therefore violated my Fourth Amendment right again by fabricating evidence before Judge Nadel, as they knew I was acting within my First Amendment right, but falsely claimed I had violated 148 PC in order to retaliate for my exercising my First Amendment right; sending me to jail without following the due process of establishing true probable cause that I had committed any crime or violated the conditions of bail. O'Neal claimed in his police report from the events of November 7 of 2023 that Judge Nadel revoked my bail, which later proved untrue. It is unclear whether Nadel told him she was going to revoke my bail or not; however regardless of what she told him, O'Neal should have known better than to allege to the county jail & district attorney that bail was revoked without following due process & obtaining a legal order to that effect.

  23. I arrived at Mendocino County Jail again for allegedly violating 148 PC & violating the conditions of my bail; illegally due to the fact I had committed no crime & had not violated the conditions of my bail. After entering the holding cell, I immediately called Aladdin Bail Bonds to post bond. Jacob Hercher at Aladdin Bail bonds told me there was no hold on me & that he should be able to get me out, so I went through the process of posting bail. Roughly one hour later, Mr. Hercher informed me that the Sheriff's Office was claiming there was a hold on me & would not release me. Mr. Hercher told me he would go to the court in Ukiah & double check if there was a hold on me, since there was nothing indicating a hold on the Sheriff's Office or court's website he normally views. Mr. Hercher then told me that according to the Mendocino County Superior Court in Ukiah, there was no hold on me & therefore no reason why Mendocino County Sheriff was not letting me out. He proceeded to submit the bond to the Sheriff's Office. Deputy Turner completed my bond paperwork, however upon completion & processing of the bond, Sergeant Stephen Bonner still refused to release me, alleging there was a 'verbal hold order'. Records show that I posted bail at roughly 4PM on November 7 of 2023 & that Lt. Eldin Johnston was the active sergeant supervising the jail at the time, yet failed to release me after I posted bail. Jacob Hercher can also testify that I posted bail around 4PM & that there was no legal hold placed on me. The allegation that there was a 'verbal hold order' must have come from either O'Neal, McLaughlin, or both of them, as they were the arresting officers who claimed they had spoken to the judge, & records show

1  the Sheriff's Office had no formal order from Judge Nadel herself or the court revoking my bail. In

2  the transcripts of the hearing on November 9th of 2023, Eloise Kelsey states that the police had

3  informed her there was an order revoking my bail, but she had not confirmed it. This is indicated in

4  the transcripts attached. Regardless of where the 'verbal hold order' came from, both Bonner &

5  Johnston knew or should have known that there was no real hold order, as they have access to

6  records from the court & sheriff's office & therefore knew there was no such legitimate hold order.

7  If they were properly trained they knew or should have known that without a formal revocation of

8  bail from the judge & the court, there is no revocation of bail. I called Mr. Hercher again & he told

9  me he 'doesn't know what is happening' & that 'this has never happened before' despite him being

10 branch manager of Aladdin Bail Bonds in Ukiah. Mr. Hercher also informed me that he spoke to a

11 lawyer near his office & she claimed there was no such thing in the justice system as a 'verbal hold

12 order'. I posted bail at roughly 3pm on November 7 of 2023, in the middle of Johnston's dayshift.

13 Johnston therefore knew or should have known I had posted bail, & should have ordered me released

14 in accordance with the Fourth Amendment he swore to protect, however failed to do so. I did not get

15 to speak to Johnston about why I was not being released, however I did speak to Bonner shortly after

16 the failed processing of my bail & asked him to release me. He said "that's not happening.",

17 indicating that he would not intervene to protect my Fourth Amendment rights despite the fact he

18 swore to protect the Constitution of the United States. Both Bonner & Johnston swore to protect the

19 Constitution of the United States. Johnston was supervising the jail, & Bonner verbally refused to

20 release me when I informed him of the situation. Because Johnston was supervising & Bonner could

21 have intervened to protect the Fourth Amendment, I believe both Eldin Johnston & Stephen Bonner

22 of Mendocino County Sheriff's Office are responsible for my being illegally held in custody for

23 roughly 42 hours after I had posted bail through Aladdin Bail Bonds.

24     24. Records will show that I was held in Mendocino County Sheriff's Office custody for

25 roughly 45 hours before first meeting a judge to review my case; or 47 hours before the second time

26 I met the judge & was ordered released. I was booked into the jail for the second time around

27 2:30PM on November 7 of 2023, posting bail almost immediately but still held in custody until the

28 judge ordered my release around 1:30PM on November 9 of 2023, or 47 hours later. Since my bond

THIRD AMENDED COMPLAINT

PAGE  19  OF 36 *[JDC TEMPLATE – Rev. 05/2017]*

was posted roughly 2 hours after I entered the jail, I was illegally held in custody for an approximate total of 45 hours. In addition to refusing to release me after I posted bail, deputies refused & failed to accommodate my Halal diet in accordance with my First Amendment right this entire time; claiming I needed to be housed & fill out a request slip to ask the kitchen myself for halal diet accommodation, as I had already done several years prior. Upon finally meeting the judge who had given me bail after the events of November 1st of 2023, the judge asked what I was doing in custody. He stated "Mr. Kisliuk is in custody. Apparently, he has bail bonds in each of these cases and yet he's in custody". Ms. Kelsey replied "Your Honor, I believe -- and I haven't verified, but I believe that there was a request for revocation of bail submitted by the police department which was signed by Judge Nadel, and the People have filed a motion to revoke bail with a request for a hearing on Monday when Mr. Kisliuk has a pre-preliminary hearing in Ten Mile." The judge replied "Well, I don't have anything in the court's file revoking bail or anything filed by the People requesting to revoke bail. I do have the motion to amend the complaint." Transcripts show there was a brief exchange between the lawyers & court staff, & the judge again said "I understand he's out of custody on both of these cases having posted bonds, the People have filed a petition for revocation of bail, and he's in custody. Why he's in custody, I don't know". One of the last things the judge said in the first session was "I didn't order it. The Court didn't order it. That's as far as I know right now." The matter was passed for things to be sorted out, as my previously appointed public defender from the first case was not present. I was then illegally held in custody for roughly another 3 hours before returning to court. When the matter was taken up again, the judge again asked what was going on & Ms. Kelsey then stated to the court there was a 'miscommunication between Judge Nadel & the Sheriff's Office', effectively implying that I had not committed a crime & my bail had not been revoked. Transcripts from my court appearance on November 9 of 2023 were recorded by two different court reporters; Christine Jones who reported the first session & Carol Deuchar who reported the second. Unfortunately transcripts from the second session at the Superior Court of Mendocino County were falsified by Court Reporter Carol Jeanette Deuchar to omit the statement from Eloise Kelsey that I was in custody as a result of a miscommunication between Judge Nadel & the Sheriff's Office, however transcripts still clearly indicate that there was such a

miscommunication. Court records & transcripts show my bail had not been revoked as Fort Bragg Police Officers alleged it was to myself, Ms. Kelsey, & the Sheriff's Office, & that I posted bail roughly 45 hours before meeting the judge for the second time on November 9 of 2023. It is unclear what exactly occurred during the time O'Neal & McLaughlin spoke with Judge Nadel on November 7th of 2023, however it was clear to the Superior Court of Mendocino County that my bail was not revoked for the events of November 7 of 2023 as O'Neal & McLaughlin claimed it was to myself, Ms. Kelsey & the Mendocino County Sheriff's Office, & that I was therefore illegally held in custody for roughly 45 hours after my bail bond was processed. During the second session, Ms. Kelsey stated "I don't want to prohibit him from exercising whatever rights he may have as a citizen to observe police conduct, but the concern is that he does have a PC 69 alleged. And in this particular incident, as I understand it, the police were investigating what, essentially, was a CPS, a Child Protective Services investigation. And Mr. Kisliuk was running at the officers & yelling at them while video taping them, and, essentially, causing them to be in fear for their safety & preventing them from properly detaining the child & getting Social Services present at the scene. So they just couldn't ensure the safety & continued investigation.' In the second session, although Carol Jeanette Deuchar omitted Ms. Kelsey's statement that I was in custody as a result of a miscommunication between Judge Nadel & the Sheriff's Office, transcripts still show the judge ordering me released, saying "He will be ordered released today on bonds already posted, I might add." I was then released on the bond I posted roughly 45 hours prior to my second meeting with the judge. If a judge truly believed I had committed the crime of 148 PC on November 7 of 2023, my bail would have been revoked. Contrary to the frightening statement made to me by McLaughlin that my bail was being revoked, my bail was not revoked. Both O'Neal & McLaughlin, despite their lack of concern for First Amendment rights, knew or should have known that revocation of bail requires due process. Instead of following this due process of revoking bail, they communicated false claims to both the prosecutor & the jail that bail revocation was granted; causing me to be illegally held in custody for an approximate total of 47 hours; 45 hours from the time I posted bail to the time I was released upon the judge's order.

 25. When I was finally released on November 9 of 2023, I checked into Motel 6 on the North

side of Ukiah. Upon lying down I immediately felt dizzy & nauseous. I tried to relax in my hotel & take time to recover, but conditions worsened over the next 48 hours & on the morning of November 11th of 2023 my conditions had worsened to the point where I needed medical attention. I first sought an ambulance but was unsure how much it would cost, so I nauseously walked to the Adventist Health Center in Ukiah. As a result of my false arrest, subsequent illegal detention & Mendocino County Jail deputies' refusal to accommodate my diet, I had contracted 'viral gastroenteritis'. Viral gastroenteritis is a serious sickness, & apparently people can & do die from this sickness. My diagnosis from Adventist Health in Ukiah is attached to this complaint as an exhibit, & if for some reason there is an error, I can provide the diagnosis to the Court upon request or in the discovery phase of this case if the Court allows. The diagnosis on November 9 of 2023 includes a professional medical opinion that I contracted the sickness 2-3 days before my diagnosis. The 48-72 hours prior to my diagnosis were all spent in the custody of Mendocino County Sheriff's Office, being illegally held after posting bail & refused halal diet accommodation. It is unclear whether I contracted viral gastroenteritis as a result of Mendocino County Sheriff's Deputies refusing to accommodate my halal diet, unsanitary jail conditions, or both, however this diagnosis nonetheless proves my sickness was contracted from some condition that I was exposed to during my illegal detention in Mendocino County Jail. If I had not been illegally held in Mendocino County Jail after posting bail, I would not have contracted the sickness. In addition to Eldin Johnston & Stephen Bonner of Mendocino County Sheriff's Office, the County of Mendocino is responsible for my contracting the sickness; as had the deputies been trained properly by the county, they would not have deprived me of my First & Fourth Amendment rights without a second thought.

26. On December 6th of 2023, a preliminary hearing was held regarding the events of November 1st of 2023. The 148 PC from the events of November 7th of 2023 was listed on the court docket, however the events were never addressed in court at all whatsoever, presumably because preliminary hearings only apply to felonies in California. Wige v. City of Los Angeles 713 F.3d 1183, 1185 (9th Circuit 2013) states that "the quantum of evidence required to support a warrantless arrest is the same as the quantum of evidence required to hold the defendant to stand trial." There was absolutely no probable cause to charge me with the PC 148 for the events of November 7th of

2023, as nothing I said or did that day could've been interpreted as a threat to their investigation in any capacity, as video shows. I was arrested for 148 PC on November 7 of 2023 only due to allegations that I had threatened them beforehand & I should therefore not be able to exercise First Amendment rights. Since the quantum of evidence available to the officers was not the same as the quantum of evidence at trial, the arrest of November 7th of 2023 cannot be shown to have met the standard of probable cause.

27. Bodycam footage of November 1 of 2023 along with court transcripts & police records will show that O'Neal shamelessly perjured himself many times during the hearing on December 6th of 2023, demonstrating his recklessness & willingness to lie, even to a judge, in a desperate attempt to establish probable cause I had violated 69 PC on November 1 of 2023. His perjuring himself on December 6 of 2023 shows his capacity to fabricate evidence in any occasion, & should call into question all his allegations against me. Both arrests were unlawful & O'Neal knew this, which is why he perjured himself to fabricate probable cause before & during the preliminary hearing on December 6 of 2023. The transcripts in combination with video footage will prove O'Neal clearly perjured himself in his police report of events on November 1 of 2023, exaggerated in his police report on November 7 of 2023, & clearly perjured himself again in court on December 6 of 2023, if the Court allows this case to proceed to discovery. O'Neal claimed during the hearing on December 6th of 2023 that he had dealt with me 'no less than 100 times', while police records will show that I have dealt with him roughly a dozen times in my whole life. He claimed I had 'cornered him into the fence' & 'raised my fist at him' during the time I was speaking to him after realizing he had towed my vehicle, which were both complete exaggerations intentionally designed by O'Neal to criminalize me & fool the court. The video shows I did not corner him into a fence, but rather approached him at a normal distance to ask why he had towed my car, realized he had fabricated the call about my cat, became frustrated & threw my boots on the ground, picking them up & throwing them on the ground again before walking away & subconsciously making the inflammatory statement I was arrested for. The allegation I had violated PC 148 on November 7 of 2023 was not addressed at any hearing, either because preliminary hearings only apply to felonies in California, or because the entire courtroom knew I had been kidnapped. Transcripts from the preliminary hearing

of December 6 of 2023 will show the charge of 148 PC on November 7 of 2023 was never addressed for whatever reason. I was held to answer for both these crimes not due to the presence of probable cause but rather due to O'Neal & Ms. Kelsey's retaliatory fabrication of probable cause that I had committed those crimes, as officers knew they had no probable cause that I willingly threatened them on November 1 of 2023, & knew that my activities on November 7 of 2023 were all protected by the First Amendment. The evidence officers claimed to have regarding the events of November 7th of 2023 was vastly different from the evidence presented in court during the preliminary hearing of December 6 of 2023, as officers presented no evidence at all that I had committed the crime of Penal Code 148 on November 7 of 2023. All they had was evidence that I exercised my First Amendment right, so they presented no evidence to the court whatsoever. They alleged that I violated 148 PC solely on the assumption that I shouldn't have been able to exercise my First Amendment right because of the alleged threat of November 1 of 2023 which the judge claimed he "doesn't see it rising to the level" of Penal Code 69.

28. The City of Fort Bragg has a longstanding, widespread & well-settled practice of violating the First & Fourth Amendments, as well as simultaneously intentionally inflicting emotional distress on individuals. The City of Fort Bragg has sat idle & watched while their officers committed multiple violations of First & Fourth Amendment rights, intentionally inflicting emotional distress multiple times over the past 2 years & refusing to discipline officers or take any accountability thereafter whatsoever. On or around August 6 of 2022, officers Shaw & Moore of Fort Bragg Police Department pulled me over on Main & South Street for failing to make a complete stop before I turned right on Main Street. Officer Frank of Fort Bragg Police Department showed up to assist them. After I was pulled over, I gave my license to officer Frank. I performed a sobriety test & demonstrated that I was completely sober, yet I was arrested & my car was towed. Shaw then told me I have the right to choose between a breathalyzer & a blood test, but that "the breathalyzer is unavailable." I was then taken to the hospital, my blood drawn, & left in the streets with no access to my car or clean clothes. I was never given my license back. Roughly an hour after this, in a video I took of the incident, (https://www.youtube.com/watch?v=90crNBC1JDs) I asked Shaw why he never gave me my license back. He replied "Because when you're arrested for DUI we confiscate

your driver's license". Officer Frank denied having ever taken my license, although this development is not shown in the video. On November 29 of 2022, Captain Thomas O'Neal attempted to arrest me simply because I approached his tow scene & spoke with his victim, violating the First, Fourth Amendments, & simultaneously intentionally inflicting emotional distress through his violation of these rights (https://youtu.be/VI5CncuTYHA?feature=shared). First he told me to move away from him while I spoke to his victim, which I did. Then he told me to leave the whole scene of the tow, justifying his order by pointing out that I had a pocket knife clipped in my pocket. Both of these orders violated my rights, as the First Amendment protects the right to assemble & the Second Amendment protects the right to possess items like pocket knives. After I complied with his illegal orders & finished speaking with the victim, I walked around the scene of the tow to get past it on my way out, & was about to say something to O'Neal when he cut me off & told me to put my hands behind my back, violating my Fourth Amendment right. I quickly took my phone out & proceeded to record him, pointing out that I had done everything he asked me to do. He made up a story suggesting I 'ran up on him with my hand on my knife' which is completely false. All I had done was possess a small pocket knife, which most everyone is allowed to do. My approaching a tow scene with a pocket knife in my pocket is not equivalent to 'running up' on someone with a knife, and Mr. O'Neal knows this, yet made this fabricated allegation in order to trick me into complying with an illegal order. There is footage of this incident & can provide it to the Court. Again, this malicious & illegal action of O'Neal constitutes an intentional infliction of emotional distress. Roughly one month later, Mr. O'Neal again attempted to illegally deprive me of my liberty by detaining me after I accidentally cut him off by leaving my hotel room as he happened to walk by. On or around January 5th of 2023, I was leaving my hotel room at Motel 6 to smoke, & happened to walk out exactly the same time as Mr. O'Neal was walking by. Mr. O'Neal ordered me to put my hands behind my back. Since I was in shock & did not expect him to be there, I instinctively complied with his illegal order. I was also afraid he might retaliate in a violent way if I did not comply this time, as I had embarrassed him by posting the video of the prior event on YouTube. After I was handcuffed for roughly 24 seconds, Mr. O'Neal realized I was not a part of his department's hotel voucher program & subsequently decided to let me go. I then asked his associate

Janette Ornelas what her name was, yet she refused to provide it, reminding me that Mr. O'Neal is her boss. Janette Ornelas is also an employee of the City of Fort Bragg, yet firmly supports Mr. O'Neal in whatever he does, even when it is illegal. Other witnesses at the scene include Officers Antoinette Moore of Fort Bragg Police Department as well as Refugio Zavala of Mendocino County Sheriff's Office. Refugio Zavala was working for Fort Bragg Police Department when I was illegally detained on or around January 5th of 2023, yet transferred to the Mendocino County Sheriff's Office shortly after the event. Again, O'Neal's brief illegal detention of my person constitutes an intentional infliction of emotional distress, as he knew he had no legitimate reason to detain me, but did so in order to establish dominance & frighten me out of exercising my rights like I did on November 29th of 2022. On April 13th of 2023 I was falsely arrested on allegations of a biased & incredible witness, & one officer subsequently perjured himself to a local judge in order to obtain a search warrant for my property while I was in custody, causing officers to instruct hotels not to rent to me based on his false allegations. The events of April 13th of 2023 are addressed in lawsuit 23-27CV-06358. All constitutional injuries from August 6 of 2022 to November 7 of 2023 are connected, as they are all targeted, malicious & intentional deprivations of constitutional rights by officers of Fort Bragg Police Department, all of them perpetrated by Captain O'Neal or officers loyal to him.

29. I submitted complaints to Fort Bragg Police Department regarding each of these incidents, all of which were denied, preventing the incidents from being addressed or remedied through this channel. I have attached the rejection of my complaints to the Chief regarding O'Neal's conduct on November 29th of 2022 & January 5th of 2023. Although the second rejection also refers to the same events of November 29th of 2022, it was a typo, as the rejections indicate that I submitted the first complaint on January 3rd of 2023, which is before the latter incident took place, & the second complaint on January 9th of 2023, which is 4 days after the second incident. Additionally, although Neil Cervenka typed the day of November 29th of 2022 in his second rejection, he clearly describes the incidents of the second complaint, as he states that I was 'briefly detained'. Had he been describing the events of November 29th of 2022, as his typo suggests, it would not have indicated any successful detainment, as O'Neal decided not to detain me on November 29th of 2022

after I warned him that I would sue him. I was only detained on January 5th of 2023, & there were no orders given prior to the order to put my hands behind my back, contrary to Neil Cervenka's statement that I was detained due to failing to obey an order. Additionally, the fact that I was detained for no reason 2 days after filing my complaint for the events of November 29th of 2022 shows that I may have been detained in retaliation for my filing of the complaint. Neil Cervenka later sent me a letter declaring that any further complaints from me would be considered frivolous & would not be investigated, thereby exhausting all means of resolving similar issues through him in the future & discouraging me from filing complaints for incidents of police misconduct at all. Neil Cervenka's refusal to admit wrongdoing as well as his refusal to supervise or discipline officers after these incidents, especially O'Neal, allowed & emboldened O'Neal & other officers to engage in the malicious, sadistic & unprofessional conduct of November 1st & 7th of 2023. Due to my complaints Neil Cervenka knew Captain O'Neal had a tendency to violate First & Fourth Amendment rights, knew O'Neal had a tendency to intentionally inflict emotional distress in retaliation for citizens' exercising these rights, & therefore knew O'Neal's employment in Fort Bragg Police Department created a dangerous environment with constant risk of constitutional injury & intentional infliction of emotional distress, yet refused to accept any responsibility or take any action to prevent these dangers whatsoever while he had the opportunity, creating a dangerous environment where constitutional injury & intentional infliction of emotional distress was possible, likely & probable. Due to Neil Cervenka's deliberate indifference towards O'Neal's violations of First & Fourth Amendment rights & intentional infliction of emotional distress, Chief Neil Cervenka is responsible for each & every illegal action of Captain Thomas O'Neal since November 29th of 2022.

30. I submitted tort claims to The City of Fort Bragg for each & every one of these events, yet they were all rejected. My tort claims for the events of August 6 & November 29 of 2022 were both denied, despite video evidence proving constitutional injury in both incidents. Even if it was determined that Shaw had the right to lie to me about my having the right to choose between a blood test & a breathalyzer, the video footage of the events of November 29th of 2022 show a clear deprivation of the First & Second Amendments of the Constitution. They then claimed to have 'lost' the tort claim for the events of January 5 of 2023, causing me to submit the claim again before it was

THIRD AMENDED COMPLAINT

PAGE 27 OF 36 *[JDC TEMPLATE – Rev. 05/2017]*

later rejected. Finally, the City of Fort Bragg rejected a claim I made involving false arrest, unnecessary destruction of property & perjury which I was subjected to on April 13th of 2023, forcing me to begin filing my grievances with the Federal Courts. Despite knowing constitutional injury was occurring & ignored by the Chief of Police, the City of Fort Bragg refused to discipline Cervenka, O'Neal, or any officer of Fort Bragg Police Department, or take any responsibility whatsoever, establishing a widespread & well-settled practice of constitutional injury. While I am not suing directly for the events of April 13 of 2023 in this case, the lawsuit for the events of April 13th of 2023 further show the results of the deliberate indifference of the City of Fort Bragg regarding violations of the Constitution; especially Fourth Amendment rights. I fell victim to perjury & unnecessary destruction of property at the hands of Fort Bragg Police Department, & there was proof of this, yet the City of Fort Bragg refused to address their officers criminal conduct at all whatsoever. These events show that officers of Fort Bragg Police Department are allowed to violate the Constitution whenever they see fit, & are not held accountable. As a result of the deliberate indifference of the City of Fort Bragg regarding the events of November 29th of 2022, January 5th of 2023, & April 13th of 2023, I was subjected to the illegal actions of officers on November 1st & 7th of 2023.

THIRD AMENDED COMPLAINT

PAGE 28 OF 36 *[JDC TEMPLATE – Rev. 05/2017]*

1

**CLAIMS**

**First Claim**

Intentional Infliction of Emotional Distress

Defendants: Thomas O'Neal, Tyler Baker, Neil Cervenka, City of Fort Bragg

31. In California, a plaintiff may sue for intentional infliction of emotional distress so long as the conduct is outrageous, was intended to cause emotional distress or was done with reckless disregard to the probability that it would cause emotional distress knowing the plaintiff was present when the conduct occurred, the plaintiff suffered emotional distress, & that the defendant caused the emotional distress. Federal Courts have jurisdiction over this state tort. Thomas O'Neal of Fort Bragg Police Department intentionally inflicted emotional distress to my person when he broadcasted the false call for service regarding the injured cat knowing that I would be listening to the radio, knowing the description of my cat & the location I lost my cat, knowing I missed my cat, knowing certain individuals had been torturing & killing cats in the time prior to his false broadcast, & knowing that it would inflict so much emotional distress to my person that I would leave my vehicle containing all of my belongings to look for my cat while he towed my car. O'Neal's intentional infliction of emotional distress caused severe emotional distress to my person as well as loss of enjoyment of life.

32. Tyler Baker of Fort Bragg Police Department intentionally inflicted emotional distress to my person by falsely broadcasting that he was chasing the cat; assisting O'Neal in his malicious & sadistic plan to inflict emotional distress to my person & tow my vehicle without my knowledge or prior warning. Tyler Baker's intentional infliction of emotional distress caused severe emotional distress to my person as well as loss of enjoyment of life.

33. Neil Cervenka, Chief of Fort Bragg Police Department, caused the intentional infliction of emotional distress inflicted on me by failing to supervise or discipline officers after repeated incidents of misconduct & constitutional injury which were reported to Cervenka through complaints to his department. Cervenka's failure to intervene & supervise or discipline O'Neal after his violations of the constitution & simultaneous intentional infliction of emotional distress on November 29th of 2022 as well as January 5th of 2023 enabled O'Neal to continue engaging in police

misconduct, constitutional injury & simultaneous intentional infliction of emotional distress, ultimately resulting in O'Neal's fabricating the call about my cat being injured & inflicting severe emotional distress to my person in the most malicious, sadistic & unprofessional way possible. The intentional infliction of emotional distress caused by Cervenka's failure to intervene & supervise or discipline officers resulted in severe emotional distress inflicted to my person as well as loss of enjoyment of life.

34. The City of Fort Bragg has a widespread & well-settled practice of intentional infliction of emotional distress through constitutional injury, & caused the intentional infliction of emotional distress that I was subjected to by failing to discipline officers after prior incidents of intentional infliction of emotional distress which I had informed them about through tort claims for constitutional injury. By repeatedly & indiscriminately ignoring legitimate tort claims filed for constitutional injury, they formed a policy of police misconduct & constitutional injury, creating an environment where officers feel free to act as they please with complete disregard for the constitution & professionalism in general. They knew they were creating a dangerous environment by continuing to employ these officers after their blatant misconduct, yet refused to take any action to prevent harm. As a result of Fort Bragg's deliberate indifference towards malicious, illegal & unprofessional police conduct, I was subjected to this latest incident of intentional infliction of emotional distress occurring on November 1st of 2023, causing severe emotional distress to my person & loss of enjoyment of life.

**Second Claim**

First Amendment

Defendants: Thomas O'Neal, Jonathan McLaughlin, Neil Cervenka, City of Fort

Bragg

35. The First Amendment states that Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances. Thomas O'Neal of Fort Bragg Police Department violated my First Amendment right by threatening to arrest me for recording his interaction with the mother & child whose car was being towed on November 7th of 2023, & then by arresting me when I later chose to ignore his illegal orders to leave the scene & exercise my First Amendment right to record his interaction with the mother & child. As a result of O'Neal's arrest for exercising my First Amendment rights on November 7th of 2023 I suffered suffered severe emotional harm, loss of enjoyment of life, harm to my reputation, & my contraction of the sickness 'viral gastroenteritis' while in custody of Mendocino County Sheriff's Office for 47 hours.

36. Jonathan McLaughlin of Fort Bragg Police Department violated my First Amendment right by following the orders of O'Neal knowing they were illegal; preventing me from approaching a public location & recording a police investigation in accordance with my First Amendment right, then helping O'Neal arrest me for exercising my First Amendment right rather than intervening to protect the First Amendment. As a result of McLaughlin's involvement & willing participation in the violation of my First Amendment right I suffered severe emotional harm, harm to my reputation, loss of enjoyment of life & was made to spend 47 hours in the custody of Mendocino County Sheriff's office without having committed any crime.

37. Neil Cervenka, Chief of Fort Bragg Police Department, caused my First Amendment right to be violated by ignoring complaints regarding past illegal actions of Thomas O'Neal; refusing to intervene & protect the First Amendment. Neil Cervenka's failure to supervise, discipline or intervene against Thomas O'Neal following his violation of the First Amendment on or around November 29th of 2022 emboldened & allowed O'Neal to continue violating the First Amendment,

creating a dangerous environment & ultimately causing the violations of my First Amendment rights on November 7th of 2023. Cervenka's failure to intervene, supervise, or discipline Thomas O'Neal following his violation of my First Amendment rights caused severe emotional distress, loss of enjoyment of life, my contracting the sickness 'viral gastroenteritis' while in custody, & harm to my reputation.

38. The City of Fort Bragg has a widespread & well-settled practice of depriving citizens of First Amendment rights, & thereby caused my First Amendment right to be violated. The City of Fort Bragg established this widespread, well-settled practice & caused my First Amendment right to be violated by failing to discipline officers like Neil Cervenka & Thomas O'Neal after their violations of the First Amendment. The City of Fort Bragg failed to discipline Thomas O'Neal after being notified of his violations of the First Amendment on November 29 of 2022, & failed to discipline Neil Cervenka after he ignored my complaints for O'Neal's violation of the First Amendment on or around November 29th of 2022, failing to intervene while he knew O'Neal was violating the First Amendment of the Constitution. The City of Fort Bragg was notified of several incidents of constitutional injury through tort claims submitted by myself regarding O'Neal's conduct, & therefore knew O'Neal's employment created a dangerous environment where the First Amendment was not protected. The City of Fort Bragg therefore had the opportunity to prevent further constitutional injury by disciplining both O'Neal for his violation of the First Amendment, & Neil Cervenka for his refusal to intervene & prevent O'Neal from violating the First Amendment, yet failed to discipline both O'Neal & Cervenka. As a result of this deliberate indifference, I was arrested for exercising my right to express myself & record officers on November 7th of 2023, being made to suffer severe emotional distress, damage to my reputation, loss of enjoyment of life, & contraction of the sickness 'viral gastroenteritis' while illegally in custody of Mendocino County Sheriff's Office for 47 hours.

THIRD AMENDED COMPLAINT
PAGE 22 OF 36 *[JDC TEMPLATE – 05/17]*

**Third Claim**

Fourth Amendment

Defendants: Thomas O'Neal, Padriac Ferris, Jonathan McLaughlin, Neil Cervenka, City of Fort Bragg

39. The Fourth Amendment guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, & particularly describing the place to be searched, and the persons or things to be seized. On November 1st of 2023, Thomas O'Neal of Fort Bragg Police Department violated my Fourth Amendment right; first by towing my vehicle while intentionally depriving me of the traditional warning afforded to others, then by failing to intervene while his officers destroyed my Miswak toothbrush during my arrest, & then by gifting property on my keychain (USB drives) to a tow company outside of law enforcement. On November 7th 2023, O'Neal further violated my Fourth Amendment rights; first by threatening to arrest me if I didn't leave the scene of his investigation despite the fact all of my activities were protected by the First Amendment, then by arresting me after I returned & failed to obey his order to leave the scene within one second, & finally by alleging that I had committed a crime & that my bail was revoked when it wasn't. O'Neal's violation of my Fourth Amendment right caused severe emotional harm to my person, damage to my reputation, loss of enjoyment of life, my 47 hour detention in Mendocino County Sheriff's Custody, & my contraction of the sickness 'viral gastroenteritis'.

40. Padriac Ferris of Fort Bragg Police Department violated my Fourth Amendment right by helping O'Neal tow my vehicle, knowing I had been deprived of the warning traditionally afforded to other citizens & residents. Ferris then violated my Fourth Amendment right by gifting my keychain; including other property besides my car keys such as thumb drives, to a tow company outside of law enforcement, as instructed by O'Neal. Both Ferris' towing of my vehicle & his gifting my property to a private tow company caused me severe emotional distress & loss of enjoyment of life.

41. Jonathan McLaughlin of Fort Bragg Police Department violated the Fourth Amendment

by assisting O'Neal, failing to intervene while O'Neal illegally arrested me for exercising my First Amendment right to record the scene of his investigation. McLaughlin's violation of my Fourth Amendment right caused severe emotional distress to my person, loss of enjoyment of life, & my contracting the sickness 'viral gastroenteritis' while held in custody of Mendocino County Sheriff's Office for 47 hours.

42. Neil Cervenka, Chief of Fort Bragg Police Department, caused my Fourth Amendment right to be violated by failing to supervise or discipline Thomas O'Neal after receiving my complaints about O'Neal's conduct on November 29 of 2022 & January 5 of 2023. By denying my complaints & failing to discipline O'Neal after blatantly illegal conduct, Neil Cervenka created an environment with high risk of constitutional injury. While he had the opportunity to discipline O'Neal, he did not, ultimately resulting in the violation of my Fourth Amendment rights on both November 1st & 7th of 2023. The violation of my Fourth Amendment rights on November 1st & 7th of 2023 caused severe emotional distress to my person, loss of enjoyment of life, damage to my reputation, & my contraction of the sickness 'viral gastroenteritis' while held in Mendocino County Sheriff's custody 47 hours.

43. The City of Fort Bragg has a widespread & well-settled practice of violating the Fourth Amendment & caused my Fourth Amendment right to be violated by failing to discipline officers after their violation of the Fourth Amendment. The City of Fort Bragg failed to discipline O'Neal after I sent them claims for blatantly illegal conduct occurring on November 29th of 2022 as well as January 5th of 2023; refusing to take any accountability even after reviewing claims I submitted regarding these events. The City of Fort Bragg additionally failed to discipline Neil Cervenka after his refusal to take measures to resolve O'Neal's obviously illegal conduct. As a result of Fort Bragg's deliberate indifference towards violations of the Fourth Amendment I was subjected to unreasonable seizures on November 1st of 2023, with elements of my property being both destroyed & unlawfully gifted to parties outside of law enforcement, & false arrest on November 7th of 2023. These violations of my Fourth Amendment right caused severe emotional distress to my person, damage to my reputation, loss of enjoyment of life, & my contraction of the sickness 'viral gastroenteritis' while held in custody of Mendocino County Sheriff's Office for 47 hours.

1
2
3
4

**Fourth Claim**

Fourteenth Amendment

Defendants: Stephen Bonner, County of Mendocino

5    44. The Fourteenth Amendment states that "All persons born or naturalized in the United
6    States, and subject to the jurisdiction thereof, are citizens of the United States and of the State
7    wherein they reside. No State shall make or enforce any law which shall abridge the privileges or
8    immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or
9    property, without due process of law; nor deny to any person within its jurisdiction the equal
10   protection of the laws." Sgt. Stephen Bonner of Mendocino County Sheriff's Office violated my
11   Fourteenth Amendment right to equal protections & due process by refusing to release me after I had
12   posted bail through Aladdin Bail Bonds. Stephen Bonner's refusing to provide equal protections &
13   follow due process resulted in my illegal detention in Mendocino County Jail for approximately 45
14   hours; causing emotional harm, loss of enjoyment of life, & my contraction of the illness 'viral
15   gastroenteritis'. There is no post-deprivation remedy for my contraction of the sickness 'viral
16   gastroenteritis' as my health was permanently affected as a result of my being in custody, & I could
17   have died from the sickness.

18   45. Mendocino County caused the violation of my Fourteenth Amendment rights by failing
19   to release me on November 7th 2023 after I posted bail through Aladdin Bail Bonds. Had Mendocino
20   County upheld the Fourteenth Amendment, Stephen Bonner of Mendocino County Sheriff's Office
21   would have known to release me after I posted bail, in accordance with due process. The County of
22   Mendocino's failure to release me resulted in the violation of my Fourteenth Amendment rights &
23   caused a 45 hour illegal detention in Mendocino County Jail, inflicting severe emotional harm, loss
24   of enjoyment of life, & my contraction of the illness 'viral gastroenteritis'. There is no post-
25   deprivation remedy for my contracting the sickness 'viral gastroenteritis' as my health was
26   permanently affected by their failure to release me after posting bail, as I could have died from the
27   sickness of 'viral gastroenteritis' that I contracted while illegally in custody.

28

1

**DEMAND FOR RELIEF**

46. I am requesting the Court award me damages in the amount of $2.75M. I am asking

$2.5M in compensatory damages due to the fact I spent roughly 47 hours illegally held in county jail

(45 hours after posting bail), suffered severe emotional distress & trauma, harm to my reputation,

loss of enjoyment of life, & severe physical harm in the form of viral gastroenteritis as a result of

these incidents. I am asking for $250,000 in punitive damages from the officials in their individual

capacities to ensure they do not engage in this malicious & illegal conduct again.


**DEMAND FOR JURY TRIAL**

☐ Plaintiff demands a jury trial on all issues.


Respectfully submitted,


Date:  4/25/2025          Sign Name:  _Daniel Kisliuk_

                          Print Name:  Daniel Kisliuk